*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0312p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

                 *Plaintiff-Appellee,*

     *v.*

JERRY RAY OAKS,

                 *Defendant-Appellant.*

No. 06-6056

On Remand from the United States Supreme Court.
No. 04-00037—J. Ronnie Greer, District Judge.

Decided and Filed: December 15, 2011

Before: KENNEDY and MARTIN, Circuit Judges; HOOD, District Judge.[*]

_____

#### COUNSEL

_____

**ON BRIEF:** Salvatore C. Adamo, LAW OFFICE OF SALVATORE C. ADAMO, Phillipsburg, New Jersey, for Appellant. Robert M. Reeves, ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

     MARTIN, J., delivered the opinion of the court, in which KENNEDY, J., joined. HOOD, D. J. (pp. 4–5), delivered a separate dissenting opinion.

_____

#### OPINION

_____

     BOYCE F. MARTIN, JR., Circuit Judge. The history of this case, recited in *United States v. Oaks*, 554 F.3d 1087, 1088 (6th Cir. 2009), is as follows:

> Defendant Jerry Ray Oaks pleaded guilty to being a felon in possession
> of a firearm and the district court in the Eastern District of Tennessee

_____

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

sentenced him to 120 months of incarceration and five years of supervised release, entering the judgment on August 9, 2006. He appealed his sentence, in the first instance, challenging, in part, the district court's use of his prior conviction for felony escape to support his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Oral argument before us was waived and we affirmed the sentencing court's judgment on May 14, 2008. On January 21, 2009, the Supreme Court granted Defendant's application for a writ of certiorari, vacated our judgment, and remanded the case to us for reconsideration in light of its decision in *Chambers v. United States*, 555 U.S. [122 (2009)].

We remanded this case "to the district court for a determination of the type of facility and level of security involved in the 'custody of the Carter County Sheriff's department' at the time of Oaks's escape." *Id.* at1088-89 (citation omitted). The district court, *United States v. Oaks*, No. 2:04-CR-37, slip op. at 4 (E.D. Tenn. July 23, 2009), made the following factual determinations:

first, it appears from the uncontroverted facts that at the time of the felony escape, Oaks was being held in law enforcement custody in the county jail on felony charges of evading arrest, felony reckless endangerment, attempted aggravated robbery, theft over $500.00 and aggravated burglary, but had been taken to a courtroom for a court appearance at the time he ran from the courtroom; secondly, while the county jail was a secure facility, the courtroom from which Oaks ran was not.

The facts show that Oaks escaped custody from a courtroom, and that the courtroom was not a secure facility. Oaks thus escaped from "nonsecure custody." At the time of his escape, Oaks was present in the courtroom to enter pleas of guilty to all his outstanding offenses and with the understanding that the prosecutor had agreed to various periods of probation. Indeed, when he was sentenced for those crimes the following week, he was given various periods of probation. He received a year of incarceration for his escape. Our task is to determine whether escape from "nonsecure custody" is a "violent felony" for sentencing purposes.

Here, as in *Chambers*, to determine whether a felony is a violent felony, "[t]he question is whether . . . an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of

physical injury.'" *Chambers*, 555 U.S. at 128-29 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). And here, as in *Chambers*, "a United States Sentencing Commission report helps provide a conclusive, negative answer." *Id.* at 129 (citations omitted). As reflected in an appendix to *Chambers*, the act of escape from "nonsecure custody" is rarely violent. *Id.* app. B (showing in a statistical table that in one hundred seventy-seven instances of escape from "nonsecure custody" in 2006 and 2007, only 1.7% resulted in some injury). Further, a felony is not necessarily a "violent felony" even if historical data show past commissions of that felony involved violence. Indeed, the Supreme Court in *Chambers* determined that "failing to report" is not a "violent felony," yet past commissions of "failing to report" involved violence in at least three instances. *Id.* at 129-30. We hold that escape from "nonsecure custody" is not a violent felony for sentencing purposes. While some courtrooms may indeed be secure facilities such that an escape from them would be an escape from "secure custody," the courtroom from which Oaks escaped was not secure. Thus, Oaks's escape from the courtroom is not a violent felony for sentencing purposes. Accordingly, we **REMAND** for resentencing consistent with this Opinion.

———————

## DISSENT

———————

HOOD, District Judge, dissenting.  I disagree with the majority's conclusion that Oaks's escape from a courtroom, without proof that the courtroom had a secure perimeter, was not a violent felony for sentencing purposes.  Rather, I conclude that because he was within the custody of law enforcement personnel at the time of his escape from the courthouse setting that he is an offender "significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'"  *Chambers v. United States*, 555 U.S. 122, 128-29 (2009).

Oaks was being held in a secure county jail before being *taken* by his custodian to the courthouse for an appearance on felony charges of evading arrest, felony reckless endangerment, attempted aggravated robbery, theft over $500.00 and aggravated burglary.  Obviously the courtroom is not as secure as the county jail, but I am hard pressed to imagine an individual who is "significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury,'" than someone who flees from law enforcement custody during an appearance in a matter in which he is facing felony charges.

The United States Sentencing Commission's *Report on Federal Escape Offenses in Fiscal Years 2006 and 2007* (Nov. 2008) (hereinafter, "Report"), to which both the *Chambers* court and the majority have given great weight, supports this conclusion. The Report defines "secure escape" as those situations in which individuals have left secure custody or law enforcement custody.[1]  Report at 6.  14.3% of the secure escape cases

---

[1] "Leaving secure custody" occurred when an "escapee left (or attempted to leave) the custody of a location with a secure perimeter, such as a prison or jail." Report at 4.  "Leaving law enforcement custody" occurred when an "escapee left (or attempted to leave) the custody of a law enforcement officer, such as during transport between institutions." *Id*.

involved force compared to 0.9% of instances of nonsecure escapes.[2]  *Id.* at 7.  27.3% of secure escapes involved a dangerous weapon while only 2.7% of the nonsecure escapes involved a dangerous weapon.[3]  *Id.* at 8.  Injury accompanied 11.7% of the secure escapes as opposed to 0.9% of the nonsecure escapes.[4]  *Id.*  Even if one considers only those escapees who left or attempted to leave law enforcement custody, 7.7% used force, 7.7% were instances that involved dangerous weapons, and injury accompanied 15.4% of the escapes.  *Id.* at 7.

Ultimately, Tenn. Code Ann. § 39-16-601(3) (2009) defines "[e]scape" as the "unauthorized departure from custody" and clearly contemplates Oaks's conduct in this instance.  *Chambers* does not preclude a finding to the contrary.  I would affirm.

---

[2]The Report groups together those instances in which an offender left nonsecure custody, failed to return to custody to serve an incarceration sentence, or failed to report to custody as "nonsecure escapes."  Report at 6.

[3]A dangerous weapon "was considered to be present if the sentencing documentation indicated that the offender used, brandished, or otherwise possessed any dangerous weapon in connection with the escape. For purposes of this analysis, a dangerous weapon means an instrument capable of inflicting death or serious bodily injury."  Report at 5.

[4]"This factor was considered to be present if the sentencing documentation indicated that the offender caused any bodily injury (including death) to another in connection with the escape."  Report at 5.